# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN M. AWAD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | No. 17-915 |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**TIMOTHY R. RICE**                                                                                   December 8, 2017
**U.S. MAGISTRATE JUDGE**

      Plaintiff Carmen Awad alleges the Administrative Law Judge ("ALJ") legally erred in denying her application for Disability Insurance Benefits ("DIB"). See Pl.'s Br. (doc. 11) at 3-9. Because Awad does not challenge the ALJ's fact findings, I accept those findings as true for purposes of this case and focus on the ALJ's legal determination. For the following reasons, I deny Awad's request for review.

      In September 2012, Awad sought DIB, alleging she had been disabled since April 2011. See Admin. Record (doc. 10) ("R.") at 10. During a December 2014 hearing before the ALJ, Awad testified about her: eleventh-grade education; past work as a sewing machine operator; pain in her low back, knees, neck, hands, and arms; treatment; and daily activities. Id. at 47-61.

      The ALJ also called a vocational expert ("VE") to testify about the availability of unskilled, "light work" jobs in the national economy for someone of Awad's age, education level, and work history.[1] Id. at 66-67. The ALJ further limited the jobs to: (1) no more than

---

[1]     Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing." 20 C.F.R. §

occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; (2) no climbing ropes, ladders, or scaffolds; (3) frequent reaching, handling, fingering, and feeling; (4) no exposure to unprotected heights or moving mechanical parts; and (5) no more than occasional exposure to weather, extreme cold, wetness, or vibration. Id. The VE identified at least three jobs with those restrictions: (1) cleaner, housekeeper; (2) cafeteria assistant; and (3) potato chip sorter. Id. at 66-67.

The ALJ next added more stringent restrictions: (1) lifting no more than 10 pounds at a time; (2) occasionally lifting and carrying items such as docket files, ledgers, and small tools; and (3) occasional reaching, handling, fingering, and feeling.[2] Id. at 67. The VE identified two available jobs: (1) usher; and (2) bakery worker/conveyor line. Id. at 67-68.

On September 2, 2015, the ALJ issued an opinion denying Awad's DIB application. Id. at 10-24. Applying the five-step sequential analysis,[3] the ALJ explained Awad had not engaged

---

404.1567(b). A full range of light work may require "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." S.S.R. 83-10, 1983 WL 31251, at *6 (1983). If someone is capable of performing light work, she can also do sedentary work. 20 C.F.R. § 404.1567(b).

[2] The first two of these additional restrictions mirror some of the limitations associated with the "sedentary work" classification, which is one step lower than the "light work" classification. See 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

[3] In determining whether a claimant is disabled, the ALJ must assess whether the claimant: (1) is engaged in substantial gainful activity; (2) has any severe impairments that significantly limit her ability to perform basic work; (3) has impairments that meet or equal the criteria set forth in the Listing of Impairments so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC") to perform work with her limitations and can return to her previous work with that RFC; and (5) can perform any other work existing in the national economy. See 20 C.F.R. § 404.1520(2)(4)(i)-(v).

in substantial gainful activity since her alleged onset date. Id. at 12. The ALJ then found Awad suffered from the following severe impairments: "carpal tunnel syndrome (bilateral) and status post carpal tunnel release surgeries, status post right shoulder injection, status post right trigger release surgery, hypertension, patella spur of the left knee, lumbar spine degenerative change, obesity, and diabetes mellitus."[4] Id. The ALJ, however, determined that none of these impairments, when considered alone or in combination, met the criteria for one of the listed impairments in the Social Security Regulations.[5] Id. at 13-14.

The ALJ next found Awad had the RFC to perform unskilled, light work with the more stringent limitations described in the ALJ's second hypothetical question to the VE. Id. at 14-15; see also supra at 1-2. The ALJ determined that, based on this RFC, Awad could not perform her past relevant work as a sewing machine operator. Id. at 22.

The ALJ then considered Awad's vocational factors relevant to her ability to perform other work in the national economy. Id. at 22. He noted that although Awad was a "younger individual" during the relevant time period, she later became a person "closely approaching

---

[4] Bilateral carpal tunnel syndrome occurs when median nerves, which run from the forearm into the palm of the hand, become compressed at the wrist. See https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Carpal-Tunnel-Syndrome-Fact-Sheet (last visited 11/30/2017). "The result may be numbness, weakness, or sometimes pain in the hand and wrist, or occasionally in the forearm and arm." Id. Release surgeries are performed to relieve some of the pressure on the compressed nerves. Id.

Lumbar spine degenerative changes refers to degeneration of the spinal discs in the lower back. See https://www.mayoclinic.org/diseases-conditions/osteoarthritis/expert-answers/arthritis/faq-20058457 (last visited 12/1/2017).

[5] The Listing of Impairments is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. 20 C.F.R. pt. 404, supbt. P, app. 1; Sullivan v. Zebley, 493 U.S. 521, 532 (1990).

advanced age."[6] Id. at 22. The ALJ also noted that Awad had a limited education and could communicate in English. Id. He found that Awad's transferability of job skills was not material to his determination because Awad would not be disabled under the Medical-Vocational Rules ("Grids") regardless of whether she had transferable job skills.[7] Id.

Based on Awad's age, education, work experience, and RFC, the ALJ concluded there were a significant number of jobs in the national economy that Awad could perform. Id. at 22-24. The ALJ explained that Awad would not be disabled pursuant to the Grids if she had the RFC to perform the full range of light duty work. Id. at 23. He noted, however, that Awad's ability to perform light duty work was impeded by the additional restrictions in her RFC. Id. To determine the extent to which these additional restrictions "eroded the unskilled light occupational base," the ALJ explained that he had asked the VE "whether jobs exist[ed] in the national economy for an individual with [Awad's] age, education, work experience, and [RFC]." Id. Because the VE testified that there were two such jobs, the ALJ deemed Awad "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and not disabled. Id. at 23-24.

The Appeals Council denied review in January 2017. Id. at 1.

---

[6] A claimant is considered a "younger person" when she is younger than 50 years old. 20 C.F.R. § 404.1563(c). The ALJ generally does not find a younger person's age will impact her ability to do work. See id. A person between 50 and 54 years old is "closely approaching advanced age," and an ALJ will address whether that person's age "along with a severe impairment and limited work experience may seriously affect [her] ability to adjust to other work." Id. § 404.1563(d).

[7] The Grids are rules used by the ALJ to determine whether a claimant is disabled based on vocational factors, such as the claimant's age, education level, and previous work experience, and the claimant's physical exertional classification. See 20 C.F.R. pt. 404, supbt. P, app. 2, § 200.00(a).

DISCUSSION

Awad argues that the ALJ's conclusion that she could perform other jobs in the national economy was legally deficient because: (1) he never assessed whether she was disabled under the sedentary work Grid rule; (2) he did not decide whether she had transferable job skills, which was necessary for a disability determination under the sedentary work Grid rule; (3) he did not ask the VE whether the light work Grid rule or the sedentary work Grid rule most closely approximated her RFC and vocational factors of age, education, and past work experience, and explain the basis for any conclusions based on the VE's testimony; and (4) he did not determine whether her RFC slightly or significantly reduced her ability to perform light work, and apply the light work Grid rule if there was a slight reduction and the sedentary work Grid rule if there was a significant reduction.[8] See Pl.'s Br. at 5-8.

I conduct a "plenary review" of the ALJ's legal conclusions. Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006). At step five of the sequential evaluation process, the Commissioner must show there is other work in the national economy that the claimant can perform. See 20 C.F.R. § 404.1520(a)(v); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). To improve the uniformity and efficiency of this determination, the Secretary of Health and Human Services promulgated the Grids, and the Commissioner's reliance on those Grids has been upheld by the Supreme Court. See Heckler v. Campbell, 461 U.S. 458, 460, 467 (1983).[9] The

---

[8] In her reply brief, Awad asserts she is entitled to summary judgment because the Commissioner does not contest any of her arguments. See Reply Br. (doc. 20) at 1-3. The Commissioner, however, argues that the ALJ did not err in any of the ways asserted by Awad because he could not rely directly on the Grids and, therefore, properly consulted a VE to determine Awad's ability to perform work. See Resp. (doc. 19) at 4-9. The Commissioner has not waived any claims related to Awad's arguments.

Grids, however, direct a finding of disabled or nondisabled at step five only where the ALJ's findings concerning the claimant's vocational factors (age, education, and work experience) and physical exertional ability (i.e., a "maximum sustained work capability" of sedentary, light, or medium) correspond to the criteria in the Grids. See 20 C.F.R. pt. 404, supbt. P, app. 2, § 200.00(a); Sykes, 228 F.3d at 263; S.S.R. 83-11, 1983 WL 31252, at * ("The criteria of a rule are met only where they are exactly met.").

Where a claimant's physical ability "falls between the ranges of work indicated in the rules (e.g., the individual can perform more than light but less than medium)," the Grids do not apply. 20 C.F.R. pt. 404, supbt. P, app. 2, § 200.00(d). Instead, "full consideration must be given to all of the relevant factors of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations." Id. The ALJ also may look to the Grids for "guidance." Id. § 200.00(d); see also id. (ALJ must determine whether other work exists for the claimant based on "the principles and definitions in the regulations, giving consideration for the [Grid rules]).

A Social Security Ruling clarifies how an ALJ should use the Grids "as a framework" for adjudicating claims where the claimant's physical exertional ability falls between ranges of work. S.S.R. 83-12, 1983 WL 31253, *1; see also 20 C.F.R. § 402.35(a)(b)(1) (rulings "are binding on all components of the Social Security Administration") Heckler, 465 U.S. at 874 n.3 (rulings do not "have the force and effect of the law or regulations but are binding on the Administration"). Where a claimant's RFC does not coincide with the definition of a particular

---

9     The Supreme Court explained use of the Grids is proper because they apply only to "an issue that is not unique to each claimant–the types and numbers of jobs that exist in the national economy"–for a claimant of previously-determined factual criteria. Heckler, 461 U.S. at 468.

range of exertional work, "the occupational base is affected and may or may not represent a significant number of jobs in terms of the [Grid rules]."[10] S.S.R. 83-12, 1983 WL 31253 at *2. The ALJ, therefore, shall "consider the extent of any erosion of the occupational base and assess its significance." Id. If the erosion is slight, "it would clearly have little effect on the occupational base." Id. "In cases of considerably greater restriction(s), the occupational base will obviously be affected." Id. Further, where the erosion is unclear, the ALJ "will need to consult a VE." Id. Similarly, where the claimant's exertional ability is "somewhere 'in the middle'" of two exertional ranges and the Grids would direct different conclusions under each exertional level, VE "assistance is advisable." Id. at *3.

Because there is no dispute that Awad did not meet the full physical exertional criteria for the Grid rules, i.e., she could to perform the full range of light work or sedentary work, the Grids did not apply to this case. See Pl.'s Br. at 5; Resp. at 5; 20 C.F.R. pt. 404, supbt. P, app. 2, § 200.00(a). The ALJ, therefore, did not need to make the multiple decisions related to application of the Grids as argued by Awad. Instead, the ALJ needed to give full consideration to the relevant facts of the case in accordance with the regulations, giving consideration to the Grids for "guidance," see id. § 200.00(a), (d), which he did.

After determining that the Grids did not apply, the ALJ consulted a VE to determine how Awad's limitations "erod[ed] the light work occupational base," R. at 23, as stated in the Social Security Regulations and Ruling 83-12, see 20 C.F.R. § 404.1566(e) (ALJ may use VE in

---

[10] The "occupational base" is "[t]he number of occupations, as represented by RFC, that an individual is capable of performing. . . . The regulations take notice of approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations. Each occupation represents numerous jobs in the national economy." S.S.R. 83-10, 1983 WL 31251, at *7.

determining whether claimant's work skills can be used in other work and, if so, which specific occupations); S.S.R. 83-12, 1983 WL 31253, *2, *3 (ALJ shall consult with VE where extent of erosion of the occupational base is not clear or when more difficult judgments are involved as to the sufficiency of the remaining occupational base).

The ALJ asked the VE whether there were jobs available to a claimant: (1) with limitations consistent with the light work exertional classification; and (2) with Awad's more stringent limitations. See R. at 66-67. The VE identified at least three jobs with significant numbers available for the first type of claimant and two jobs with significant numbers for the second type of claimant. Id. at 67-68. Based on the VE's testimony, the Dictionary of Occupational Titles, and Awad's vocational factors and RFC, the ALJ concluded Awad could perform other work that exists in significant numbers in the national economy and was, therefore, not disabled under "the framework" of the Grids. Id. at 24.

Awad contends that the ALJ erred because he failed to make any decision about the extent of the reduction of the light work occupational base. See Pl.'s Br. at 7. The ALJ, however, was not required to make such a finding. See 20 C.F.R. pt. 404, supbt. P, app. 2, § 200.00(a) (ALJ shall consider Grids for guidance when criteria do not meet); S.S.R. 83-12, 1983 WL 31253, *2, *3 (ALJ shall consider extent of erosion of occupational base and should consult VE to determine sufficiency of the occupational base). Further, the ALJ considered the extent of the erosion of the light work occupational base by questioning the VE about jobs that were available within the light work classification and with Awad's more stringent restrictions. See R. at 23, 66-68.

Awad asserts that "the fact that the [VE] was able to identify *two* light jobs [was] not

sufficient to meet the ALJ's burden to determine whether there was a 'significant reduction' in the light occupational base." Pl.'s Br. at 8. The VE, however, identified only three jobs for a claimant with restrictions within the definition for light exertional work. See R. at 67. The ALJ also determined, based on the DOT, that there were approximately 26,715 usher jobs nationwide and approximately 37,570 bakery worker, conveyor line jobs nationwide. Id. at 23. Thus, the VE's testimony sufficiently established a significant number of jobs in the national economy that Awad could perform and that there was only a slight reduction of the light occupational base. See S.S.R. 83-10, 1983 WL 31251, at *4 ("Whether work exists in the national economy for a particular individual depends on whether there is a significant number of jobs (in one or more occupations) with requirements that the individual is able to meet."); see also Martin v. Barnhart, 240 F. App'x 941, 946 (3d Cir. 2007) (SSR 83-12 does not "mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform.") (citing Boone v. Barnhart, 353 F.3d 203, 210 (3d Cir. 2003)).

Lastly, Awad contends that the Administration's Program Operational Manual System (the "POMS") required the ALJ to consult the VE to decide whether the light work or sedentary work classifications "most closely approximated" her RFC and vocational factors, and to explain any conclusions related to that testimony. Pl.'s Br. at 7 (quoting POMS: DI 25025.015). The POMS, however, have no legal force and do "not bind" the Commissioner. Schweiker v. Hansen, 450 U.S. 785, 789 (1981); see also Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 859 (3d Cir. 2007) (POMS did not aid claimant because they "lack the force of law and create no

judicially-enforceable rights"). The ALJ also informed the VE of all of Awad's vocational factors and RFC limitations to allow the VE to assess the extent of those restrictions and decide whether Awad could perform work with those restrictions.

        An appropriate Order follows.